(109 App. Div. 569)

## BOISNOT v. WILSON.

(Supreme Court, Appellate Division, First Department.  December 8, 1905.)

1. MASTER AND SERVANT—ACTION FOR ACCOUNTING—DIVISION OF PROFITS—
WHAT ARE PROFITS.

Plaintiff was employed by defendant to conduct a drug store. and was· to receive as compensation a weekly salary and one-third of the. profits. The drug store was opened at one place, and was later moved tc. another location; defendant having sold his lease of the original location. Defendant was the sole owner of the lease, and plaintiff had no title thereto. *Held*, on an accounting of the profits, that the amount realized by defendant from the sale of the lease should not be included in the profits in which plaintiff was to share.

2. SAME.

The salary of a bookkeeper, in whose employment plaintiff acquiesced and accepted statements of accounts charging the bookkeeper's salary as an item of expense, should also be deducted from the profits.

3. SAME.

Defendant himself should be allowed nothing as salary for services rendered by him.

4. SAME.

The expense account should be diminished by the amount of an over-charge made by defendant for goods furnished by him to the store.

5. SAME.

The amount of money expended in moving the store from its original to its new location should not be included in the expense account.

Patterson and Laughlin, JJ., dissenting from paragraph 3.

Appeal from Judgment on Report of Referee.

Action by Harry S. Boisnot against William Wilson.  From a judgment in favor of plaintiff, entered on the report of a referee, defendant appeals.  Modified and affirmed.

See 88 N. Y. Supp. 867.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

R. Floyd Clarke, for appellant.
Wm. B. Ellison, for respondent.

PATTERSON, J.  This action was brought to recover upon· a contract of employment.  It is alleged in the complaint that the plaintiff agreed to take charge of and manage a drug store belonging to the defendant at Thirty-Fourth street and Broadway, in the city of New York, and that the defendant agreed to pay the plaintiff the sum of $30 a week and one-third of the profits; that the plaintiff entered into such employment on December 15, 1889, and continued therein until November 1, 1903.  The case is relieved from some embarrassment by the fact that the making of the contract is conceded, and also that the plaintiff rendered services during the whole of the period mentioned.  The dispute upon the appeal relates to the rulings of the referee as to certain items which the defendant claims should have been allowed in reduction of the amount found to be the total profit of the business during the period of the plaintiff's employment.

The referee found as matter of fact that on December 14, 1889, the defendant bought the lease of the store at Thirty-Fourth street and Broadway, and on August 1, 1901, sold that lease and received $2,000 for the same, which sum he credited to the receipts of the business. He found as a conclusion of law that the defendant was at all times sole owner of the lease and that the plaintiff never had any title thereto. He declined, however, to find, as was requested by the defendant, "that the lease should be charged" against and deducted from the receipts of the store. This was obviously an error, and it was conceded by the respondent upon the argument that it was so. The plaintiff had no interest in the stock, fixtures, or capital of the firm. Therefore he had no interest in the lease, and the $2,000 should have been deducted from the receipts of the business, which the referee allowed the plaintiff to participate in. It is clear thus far that the judgment must be modified by reducing the profits as found by the referee by the sum of $2,000.

Two other items which the referee refused to allow are the defendant's claim of salary or compensation to himself for the years 1899 and 1900, and for the services of a bookkeeper he employed during those years. I am of the opinion that both sums should have been allowed for the period named. The plaintiff testified that he had agreed to keep all the accounts of the business, and that he did keep them until September 1, 1899, at which time one Hughes was employed by plaintiff as a bookkeeper, and he took full charge of the books. He made out a complete statement of accounts for the years 1898, 1899, and 1900, and those accounts were duly rendered to the plaintiff. The referee found as matter of fact that on or about June 13, 1900, defendant rendered to the plaintiff a detailed statement of account for the year 1899, and that on or about the 10th of August, 1901, he again rendered to the plaintiff a detailed statement of account for 1900, and that on the account there appeared for each year defendant's salary or compensation of $1,560 and Hughes' salary of $260; that inclosed with each of these statements was a check made by defendant to plaintiff's order for the exact sum shown by the rendered statements as a one-third share of the profits. The plaintiff noticed the items of defendant's and Hughes' salaries, but nevertheless indorsed and cashed the checks sent him, and acknowledged receipt of the accounts and checks, and thanked defendant therefor, and never objected to Hughes or defendant about the charges for salaries. From those facts the referee found that the plaintiff and defendant accounted between themselves for the years 1899 and 1900, that each of the accounts rendered is a stated account, and that defendant paid plaintiff his share of the profits in full for each of those years, notwithstanding which, in stating the account of the one-third profits to which the plaintiff was entitled, he refused to allow what is called the salaries of the defendant and of Hughes for the years 1899 and 1900. While the referee found that the statements which charged the salaries were accounts stated, and that the payments made in accordance with those statements were in full payment, yet in a subsequent conclusion he altered the effect of that finding by striking out the charges for the defendant's and Hughes' so-called salaries.

It seems to me that Hughes' salary should be allowed. The plaintiff had kept the accounts up to a certain time, but afterwards acquiesced in Hughes being employed to do so. The plaintiff also, for the years mentioned, acquiesced in the statements of account made to him, fully understanding the contents of the same. The situation is simply this: When accounts were presented from year to year, they were received by the plaintiff, were acted upon by him with full knowledge of what was contained therein, and he accepted the checks sent him. There was an acquiescence in the statement presented to him of the balance that was due him on that account. It is the case of a debtor offering a certain sum of money in full satisfaction of an unliquidated demand, and the creditor accepting and retaining the money and making no protest. Therefore the account for each year was settled. It seems to me that what was held in Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785, applies. There is no suggestion here that the plaintiff did not accept the checks in full settlement. They were in fact so accepted. Nor can it be said that the payments were made and received under a mistake, either mutual or on the part of the plaintiff. The plaintiff knew exactly what was in those accounts, and he terminated all dispute that might have existed between himself and the defendant by accepting checks in full settlement for each year for which they were given. It is not a question of opening an account stated for fraud or mistake. The accounts are settled accounts. I think there ought to have been an allowance for the years mentioned, not only of the amount charged for the services of Hughes, the bookkeeper, but also the amounts which the defendant charged as expenses of the business in compensation to himself for services rendered.

But although the accounts were presented and each item was known to the plaintiff, and he acquiesced in and settled the accounts, that in no way changed the original agreement which existed between him and the defendant. No defense is set up of the modification of an original contract. The plaintiff was entitled to one-third of the profits for each year, and, if he settled at an agreed amount for one year, such settlement had no relation to subsequent years. No new contract was made. The plaintiff was still entitled to his one-third of the profits for future years, and there is no ground upon which it can be held that there was a new or altered contract entered into by which he agreed that the defendant should charge as expenses a salary for himself for every year. I think that each yearly account, when received by the plaintiff was settled, and the balance paid in accordance with the settlement was an acquiescence by the plaintiff only as to each year's condition of the business, and that it has no other or greater effect, and cannot be construed as a modification of the contract.

It was found by the referee that the defendant furnished a certain article, called "Calisaya," to the store under the management of the plaintiff, and that he overcharged for it, or, in other words, diminished the profits arising from the sale of this article by overcharging its cost price. The referee directed that the overcharge be deducted

from the expenses. It seems to me that the referee was right in this regard. The defendant was only entitled to charge for that article what it actually cost. The referee found that that actual cost was $5.40 and the finding is abundantly sustained by the evidence. It is immaterial what the principal ingredients were. The cost price of the article throughout the employment of the defendant was $5.40. The defendant testified that the cost of producing the article increased, so as to warrant his advancing its price; but he admits that all over a certain sum was profit to himself. He should have dealt fairly and frankly with the plaintiff in regard to this matter, and the plaintiff was entitled to be credited with the excess in the amount charged.

The business of which the plaintiff was the manager had been conducted at Thirty-Fourth street and Broadway, and on August 1, 1901, was removed to 1360 Broadway. The referee found as matter of fact that certain sums of money were actually expended in moving, and he refused to include in the current expenses of the business the cost of removing from one store to the other. In this he was correct. What the plaintiff was entitled to was one-third of the profits of the business, wherever it was conducted; and, when that business was transferred from one store to another, profits were to arise from the business conducted in the new store after it was equipped and ready for business. The equipment of the store had nothing to do with the plaintiff's management of it. His interest began afterwards, and when the store was ready for the purposes of making sales or conducting business therein.

The referee found the profits of the business to have been $76,878.96. From that amount should be deducted for the lease $2,000, and for salaries $3,640, thus reducing the profits to $71,238.96. The plaintiff's share was one-third, namely, $23,746.32. From that must be deducted the sum of $15,509.78, which has already been paid to the plaintiff, leaving $8,236.54. It appears that a counterclaim of the defendant to the extent of $2,421.48 must be deducted also, leaving $5,815.06, for which the plaintiff is entitled to judgment.

Judgment should therefore be modified by allowing the plaintiff the sum of $5,815.06. Costs of the appeal to the appellant.

LAUGHLIN, J., concurs.

CLARKE, J. I dissent from so much of the opinion as allows a credit to the defendant for his own claim for salary. I think the one-third of the bookkeeper's salary was a proper expense charge against the business, and should have been allowed, for the years 1899, 1900, 1901, 1902, and to November 7, 1903, being four years, ten months, and one week, in all, $1,255, and the account should be stated as follows: Profits of the business as found by the referee, $76,878.96. From which should be deducted the lease, $2,000, and for bookkeeper's salary $1,255; thus reducing the profits to $73,623.96. The plaintiff's share was one-third, namely, $24,541.32. From that must be deducted $15,509.78, already paid, leaving $9,031.54, from which must be deducted the counterclaim allowed of $2,237.28, leaving as the principal sum due $6,794.26. Calculating the interest for the

period as allowed in the decision, it amounts to $543.53, making the amount due as of March 23, 1905, $7,337.79.

The judgment should be modified accordingly, and, as modified, affirmed, with costs of the appeal to the appellant.

O'BRIEN, P. J., and INGRAHAM, J., concur.